IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-409

 No. COA20-190

 Filed 3 August 2021

 Graham County, No. 16 CRS 000147

 STATE OF NORTH CAROLINA

 v.

 KIMBERLY GAIL TEESATESKIE, Defendant.

 Appeal by Defendant from judgment entered 12 July 2019 by Judge J. Thomas

 Davis in Graham County Superior Court. Heard in the Court of Appeals 9 February

 2021.

 Attorney General Joshua H. Stein, by Assistant Attorney General John W.
 Congleton, for the State.

 Hynson Law, PLLC, by Warren D. Hynson, for defendant-appellant.

 MURPHY, Judge.

¶1 A trial court properly denies a defendant’s motion to dismiss charges of driving

 while impaired and felony death by motor vehicle when there is sufficient evidence of

 the defendant’s impairment. Sufficient evidence of impairment is such evidence,

 viewed in the light most favorable to the State, as a reasonable mind might accept as

 adequate to support the conclusion that the defendant was appreciably impaired,

 either mentally or physically. Here, the trial court properly denied Defendant’s
 STATE V. TEESATESKIE

 2021-NCCOA-409

 Opinion of the Court

 motion to dismiss, where there was sufficient evidence of appreciable physical

 impairment due to Defendant’s failure of multiple sobriety tests, unsteady gait,

 lethargy, slurred speech, and a drug recognition expert’s opinion that Defendant was

 impaired.

¶2 Additionally, a defendant must show an abuse of discretion to be entitled to

 relief for a trial court’s error in allowing expert testimony that does not comply with

 the requirements of North Carolina Rule of Evidence 702. However, when the

 substance of improperly admitted expert testimony is admitted properly via another

 source, a defendant cannot show prejudice. Here, even assuming the trial court

 abused its discretion in admitting expert testimony indicating that Hydrocodone

 could have been in Defendant’s blood test and been hidden by other results, this

 assumed abuse of discretion was not prejudicial since there was evidence that

 Defendant admitted to an officer that she had taken Hydrocodone.

 BACKGROUND

¶3 On 1 January 2015, around 10:45 p.m., Defendant Kimberly Teesateskie was

 driving back from a party with her best friend, Maggie Whachacha, in the passenger

 seat when Defendant drove off Snowbird Road, a state-maintained highway, and

 struck a tree. Defendant sustained minor injuries; however, Ms. Whachacha did not

 survive her injuries. As a result of the accident, Defendant was charged with felony

 death by motor vehicle, reckless driving, driving while impaired, and murder.
 STATE V. TEESATESKIE

 2021-NCCOA-409

 Opinion of the Court

 Defendant’s murder charge was later voluntarily dismissed by the State.

¶4 When first responders arrived at the scene of the accident, they had Defendant

 leave her vehicle and walk to a patrol car so that emergency services could try to help

 Ms. Whachacha. On the way to the car, Defendant walked normally and without

 need of assistance. One of the first responders testified Defendant struggled to stay

 awake and fell asleep while sitting in his patrol car. Additionally, an emergency

 medical technician (“EMT”) testified that, after the accident, Defendant could hear

 and understand him, had properly functioning and reacting eyes, good pulse and

 blood pressure, and was able to answer questions competently, such that he did not

 believe Defendant had ingested any impairing substance.

¶5 However, Trooper Harold Hoxit of the North Carolina Highway Patrol, upon

 speaking with Defendant at the scene, was concerned that she was impaired.

 Defendant spoke with a “thick fat tongue, sort of mumbling her speech” and seemed

 to struggle to stay awake. She was responsive and Trooper Hoxit did not notice a

 smell of alcohol or observe glassy eyes, although he did notice she swayed when

 walking and he believed it seemed like her balance was off. Defendant claimed to

 Trooper Hoxit that she was blinded by a truck’s headlights, causing her to drive off

 the left side of the road and her car hit the tree almost immediately after. Trooper

 Hoxit believed “she possibly could be impaired” and contacted a drug recognition

 expert. Trooper Hoxit then drove Defendant in his patrol vehicle to the Graham
 STATE V. TEESATESKIE

 2021-NCCOA-409

 Opinion of the Court

 County Sheriff’s Office.

¶6 A drug recognition expert, Trooper Mike McLeod of the North Carolina

 Highway Patrol, met Defendant and Trooper Hoxit at the Sheriff’s office. Defendant

 appeared to be asleep in the car when they arrived, and when she awoke and walked

 into the Sheriff’s office she shuffled and was unsteady on her feet. After a preliminary

 examination and conducting multiple sobriety tests, Trooper McLeod ultimately

 concluded Defendant was under the influence of a central nervous system depressant

 and narcotic analgesic and her mental and physical faculties were appreciably

 impaired by these substances. Trooper McLeod based this opinion on the totality of

 the circumstances, including Defendant’s results from a horizontal gaze nystagmus

 (“HGN”) test, which revealed six out of six indicators of impairment, a lack of

 convergence eye test, which indicated impairment, a walk and turn test, which

 revealed seven out of eight indicators of impairment, a finger to nose test, which

 indicated possible impairment, her pupil’s reaction to light, which revealed a possible

 indicator of ingestion of drugs due to her pupil’s “very slow” reaction to light, her

 muscle tone check, which indicated possible ingestion of drugs due to the muscle tone

 being “flaccid [and] excessively soft,” and Defendant’s statement regarding her drug
 STATE V. TEESATESKIE

 2021-NCCOA-409

 Opinion of the Court

 and alcohol consumption.1

¶7 Defendant told Trooper McLeod that she had taken Citalopram, Ranitidine

 HCL, Metformin, Tramadol, Gabapentin, and Hydrocodone earlier that day. She also

 stated she drank a mixed drink, which had one-and-a-half shots of vodka, and two

 beers that evening, most recently at 9:30 p.m. Further, she stated she took two 10

 mg Hydrocodone pills at 9:30 p.m. A blood sample taken at 2:12 a.m. found a blood

 alcohol concentration of 0.00 grams of alcohol per 100 millimeters, but revealed the

 presence of Xanax, Citalopram, and Lamotrigine. Over objection, the State’s blood

 analyst confirmed it was possible “that Hydrocodone could have been present in

 [Defendant’s] blood,” but that “[she] could not [report its presence] based on a

 masking effect of Lamotrigine” or it could have been present in “an abundance that

 is much smaller than what [she could report] or it may have all been metabolized.”

 The jury was only instructed on alcohol, Alprazolam, also known as Xanax, and

 Hydrocodone as potential impairing substances. Alcohol and Xanax are central

 nervous system depressants, and Hydrocodone is a narcotic analgesic.

¶8 At the conclusion of the State’s evidence, Defendant moved to dismiss the

 1 Trooper McLeod conducted an HGN test, a vertical gaze nystagmus test, a lack of

 convergence eye test, a modified Rhomberg balance test, a walk and turn test, a finger to
 nose test, and checked Defendant’s vital signs, pupil size and reaction to light, oral and nasal
 cavities, and muscle tone.
 STATE V. TEESATESKIE

 2021-NCCOA-409

 Opinion of the Court

 charges, which the trial court denied. Defendant renewed this motion at the

 conclusion of all evidence, which was again denied.

¶9 Defendant was convicted of all charges and sentenced to 60 to 84 months in

 prison.2 She was convicted of felony death by motor vehicle and driving while

 impaired under the theory of impairment in N.C.G.S. § 20-138.1(a)(1). N.C.G.S. § 20-

 138.1(a)(1) (2019) (“A person commits the offense of impaired driving if he drives any

 vehicle upon any highway, any street, or any public vehicular area within this State:

 (1) While under the influence of an impairing substance”). Defendant timely appeals.

 ANALYSIS

¶ 10 On appeal, Defendant contends the trial court erred in denying her motion to

 dismiss as there was insufficient evidence of impairment to support her charge of

 driving while impaired and, in turn, her charge of felony death by motor vehicle.

 Defendant also argues that she was prejudiced by the trial court’s abuse of discretion

 in admitting speculative expert testimony that Hydrocodone could have been in

 Defendant’s blood. We disagree.

 A. Motion to Dismiss

¶ 11 Defendant argues her motion to dismiss the charges of felony death by motor

 2 Defendant was properly sentenced only on the reckless driving charge and the felony

 death by motor vehicle charge, as driving while impaired is a lesser included offense of felony
 death by motor vehicle.
 STATE V. TEESATESKIE

 2021-NCCOA-409

 Opinion of the Court

vehicle and driving while impaired should have been granted because the evidence of

impairment here was insufficient, as it only raised a suspicion or conjecture that

Defendant was appreciably impaired.

 We review the trial court’s denial of [a] [d]efendant’s
 motion to dismiss de novo. When ruling on a defendant’s
 motion to dismiss, the trial court must determine whether
 the State presented sufficient evidence (1) of each essential
 element of the offense charged, and (2) that the defendant
 is the perpetrator of the offense. To be sufficient, the State
 must present such relevant evidence as a reasonable mind
 might accept as adequate to support a conclusion.

 As always, in our review of a ruling on a motion to dismiss,
 we must view the evidence in the light most favorable to
 the State and allow the State every reasonable inference
 that may arise upon the evidence, regardless of whether it
 is circumstantial, direct, or both.

State v. McDaris, 852 S.E.2d 403, 406-07 (N.C. Ct. App. 2020) (citations and marks

omitted). “If there is a conflict in the evidence, the resolution of the conflict is for the

jury.” State v. Mason, 336 N.C. 595, 597, 444 S.E.2d 169, 169 (1994). “A motion to

dismiss should be granted, however, when the facts and circumstances warranted by

the evidence do no more than raise a suspicion of guilt or conjecture since there would

still remain a reasonable doubt as to defendant’s guilt.” State v. Simpson, 235 N.C.

App. 398, 403-04, 763 S.E.2d 1, 5 (2014). It is not the role of our Court to sit in place

of the jury and impose our interpretation of the evidence. See State v. Moore, 366

N.C. 100, 108, 726 S.E.2d 168, 174 (2012) (“The jury’s role is to weigh evidence, assess
 STATE V. TEESATESKIE

 2021-NCCOA-409

 Opinion of the Court

 witness credibility, assign probative value to the evidence and testimony, and

 determine what the evidence proves or fails to prove.”).

¶ 12 Here, Defendant’s motion to dismiss concerned the charges of felony death by

 motor vehicle and driving while impaired. “The elements of felony death by [motor]

 vehicle are: (1) [the] defendant unintentionally causes the death of another; (2) while

 driving impaired as defined by [N.C.G.S. § 20-138.1(a)(1)] . . . ; and (3) the impairment

 was the proximate cause of the death.” State v. Davis, 198 N.C. App. 443, 446-47,

 680 S.E.2d 239, 243 (2009) (quoting State v. Bailey, 184 N.C. App. 746, 748, 646

 S.E.2d 837, 839 (2007)).

¶ 13 In terms of driving while impaired, our statutes read, “[a] person commits the

 offense of impaired driving if he drives any vehicle upon any highway, any street, or

 any public vehicular area within this State . . . [w]hile under the influence of an

 impairing substance[.]” N.C.G.S. § 20-138.1(a)(1) (2019).

¶ 14 Since Defendant only challenges the impairment element, we only analyze

 whether there was sufficient evidence of impairment. See N.C. App. R. 28(a) (2021)

 (“The scope of review on appeal is limited to issues so presented in the several briefs.

 Issues not presented and discussed in a party’s brief are deemed abandoned.”).

 To support a charge of driving while impaired, the State
 must prove that the defendant has drunk a sufficient
 quantity of intoxicating beverage or taken a sufficient
 amount of narcotic drugs, to cause him to lose the normal
 control of his bodily or mental faculties, or both, to such an
 STATE V. TEESATESKIE

 2021-NCCOA-409

 Opinion of the Court

 extent that there is an appreciable impairment of either or
 both of these faculties. However, the State need not show
 that the defendant was “drunk,” i.e., that his or her
 faculties were materially impaired. The fact that a
 motorist has been drinking, when considered in connection
 with faulty driving or other conduct indicating an
 impairment of physical and mental faculties, is sufficient
 prima facie to show a violation of [N.C.G.S. § 20-138.1]. It
 follows that evidence of such faulty driving, along with
 evidence of consumption of both alcohol and cocaine, is
 likewise sufficient to show a violation of [N.C.G.S. § 20-
 138.1].

 State v. Norton, 213 N.C. App. 75, 78-79, 712 S.E.2d 387, 390 (2011) (second emphasis

 added) (citations, footnote, and marks omitted). Giving the State every reasonable

 inference from the evidence, there was “such relevant evidence as a reasonable mind

 might accept as adequate to support a conclusion” that Defendant was impaired.

 McDaris, 852 S.E.2d at 407.

¶ 15 Defendant argues the evidence here “did not lend itself to a reasonable

 inference that [she] was appreciably impaired, but only raised a suspicion or

 conjecture of that possibility.” Defendant bases this argument on evidence showing:

 the accident occurred at night on a curvy mountain road; Defendant gave consistent

 explanations of how the accident happened; Defendant expressed concern for the

 safety of Ms. Whachacha; Defendant was responsive according to EMTs; was able to

 walk without help; was overweight, diabetic, and had two bad knees in addition to

 the car accident, which affected the results of her sobriety tests; and that not all of
 STATE V. TEESATESKIE

 2021-NCCOA-409

 Opinion of the Court

 the sobriety tests suggested she was intoxicated. However, Defendant relies only on

 evidence that conflicts with other evidence presented by the State.

¶ 16 Here, the State presented sufficient evidence of impairment to survive

 Defendant’s motion to dismiss. This evidence includes: Defendant’s results from

 several standardized field sobriety tests, including the HGN test, the walk and turn

 test, the convergence test, and the finger-to-nose test; Defendant’s statement to

 Trooper McLeod that she drank three and half drinks, with her last being only one

 hour and fifteen minutes before the accident; Defendant’s statement to Trooper

 McLeod that she took 20 mg of Hydrocodone one hour and fifteen minutes before the

 accident; Defendant, although not suffering a related injury, was unable to stay

 awake following the accident; Defendant was observed walking with an unsteady

 gait; Defendant had slurred and strange speech; and Trooper McLeod’s opinion that

 Defendant was impaired as result of both her performance on the sobriety tests and

 her behavior. This evidence of impairment of Defendant’s physical faculties—namely

 her slurred speech, lethargy, unsteady gait, and failed sobriety tests, in connection

 with an admission to drinking and taking drugs—is sufficient evidence of impairment

 under N.C.G.S. § 20-138.1. See Norton, 213 N.C. App. at 79, 712 S.E.2d at 390

 (emphasis added) (“The fact that a motorist has been drinking, when considered in

 connection with faulty driving or other conduct indicating an impairment of physical

 and mental faculties, is sufficient prima facie to show a violation of [N.C.G.S. § 20-
 STATE V. TEESATESKIE

 2021-NCCOA-409

 Opinion of the Court

 138.1].”).

¶ 17 Furthermore, we have held that “[t]he opinion of a law enforcement officer . . .

 has consistently been held sufficient evidence of impairment, provided that it is not

 solely based on the odor of alcohol.” State v. Mark, 154 N.C. App. 341, 346, 571 S.E.2d

 867, 871 (2002), aff’d per curiam, 357 N.C. 242, 580 S.E.2d 693 (2003). In Mark, we

 held “the State presented sufficient evidence that [the] defendant was impaired”

 based on a law enforcement officer’s “[testimony] that he formed an opinion that [the]

 defendant was appreciably impaired after conducting a field sobriety test.” Id.

 “Accordingly, we [found] no merit to [the] defendant’s third assignment of error [to

 the trial court’s denial of his motion to dismiss the driving while impaired charge].”

 Id.

¶ 18 Here, Trooper McLeod, a drug recognition expert, testified that he formed an

 opinion that Defendant was appreciably impaired by a central nervous system

 depressant or narcotic analgesic based upon a standardized 12-step drug influence

 evaluation, which included indications of impairment from Defendant’s results on

 multiple field sobriety tests. This evidence was sufficient evidence of Defendant’s

 impairment. See id.

¶ 19 Although Defendant points us to conflicting evidence, conflicting evidence does

 not allow the trial court to grant a motion to dismiss; it is well established that

 conflicting evidence is for the jury to resolve. See Mason, 336 N.C. at 597, 444 S.E.2d
 STATE V. TEESATESKIE

 2021-NCCOA-409

 Opinion of the Court

 at 169 (“The defendant’s only assignment of error is to the overruling of his motion to

 dismiss for the insufficiency of the evidence. He bases this argument on certain

 inconsistencies in the evidence and particularly on some evidence that the pistol may

 have fired accidentally. In determining whether evidence is sufficient to survive a

 motion to dismiss, the evidence is considered in the light most favorable to the State.

 If there is a conflict in the evidence, the resolution of the conflict is for the jury.”).

 Defendant’s contention that the evidence presented here was only sufficient to create

 a suspicion of impairment is incorrect, and the conflicting evidence Defendant points

 to was for the jury to resolve, not us on appeal. The trial court properly denied

 Defendant’s motion to dismiss as there was sufficient evidence of impairment to

 proceed to a jury, despite conflicting evidence.

 B. Expert Testimony
¶ 20 Defendant argues the trial court should not have allowed the State’s expert,

 Amber Rowland, to testify:

 It is possible that [Hydrocodone] came out [in the blood
 test] at the same time as Lamotrigine; and, therefore, I
 could not call it based on a masking effect of Lamotrigine.
 It can also be an abundance that is much smaller than
 what we could call or it may have all been metabolized.

 Defendant argues this speculative testimony about the presence of Hydrocodone was

 in violation of Rule 702 “because it was not based on scientific or technical knowledge

 that could assist the jury in understanding the evidence or deciding a fact in issue.
 STATE V. TEESATESKIE

 2021-NCCOA-409

 Opinion of the Court

 Moreover, it was impermissibly based on unreliable principles and methods.”

 Further, Defendant argues it was prejudicial to her because “[a]t the heart of this

 trial was the question of whether [Defendant] was appreciably impaired at the time

 of the accident” and the expert’s testimony regarding Hydrocodone, a drug Defendant

 claims to be stigmatized,3 pushed otherwise insufficient and conflicting evidence over

 the line to convince the jury Defendant was guilty. Specifically, she points to the

 jury’s note asking, “[d]id witness Amber Rowland state in her testimony that

 Hydrocodone was found in conformatory [sic] or other testing?”

¶ 21 The State contends this issue was not properly preserved because any objection

 was waived by previous testimony that was not objected to, and Defendant only

 objected based on relevance and not Rule 702, with any Rule 702 objection not being

 apparent from the context.

 In order to preserve an issue for appellate review, a party
 must have presented to the trial court a timely request,
 objection, or motion, stating the specific grounds for the
 ruling the party desired the court to make if the specific
 grounds were not apparent from the context. It is also
 necessary for the complaining party to obtain a ruling upon
 the party’s request, objection, or motion.

 N.C. R. App. P. 10(a)(1) (2021). “Where evidence is admitted over objection and the

 same evidence has been previously admitted or is later admitted without objection,

 3 Defendant raises the stigmatization argument for the first time on appeal.
 STATE V. TEESATESKIE

 2021-NCCOA-409

 Opinion of the Court

 the benefit of the objection is lost.” State v. Alford, 339 N.C. 562, 570, 453 S.E.2d 512,

 516 (1995). “Even valid objections may be, and are usually waived in [non-capital

 cases] by failure to follow the recognized practice by motion to strike or by motion to

 limit if the evidence is not competent.” State v. Beam, 45 N.C. App. 82, 84, 262 S.E.2d

 350, 352 (1980) (quoting State v. Battle, 267 N.C. 513, 520-21, 148 S.E.2d 599, 604

 (1966)).

¶ 22 Additionally, Rule 702(a) states:

 (a) If scientific, technical or other specialized knowledge
 will assist the trier of fact to understand the evidence or to
 determine a fact in issue, a witness qualified as an expert
 by knowledge, skill, experience, training, or education, may
 testify thereto in the form of an opinion, or otherwise, if all
 of the following apply:

 (1) The testimony is based upon sufficient facts or data.

 (2) The testimony is the product of reliable principles and
 methods.

 (3) The witness has applied the principles and methods
 reliably to the facts of the case.

 N.C.G.S. § 8C-1, Rule 702(a) (2019). Regarding Rule 702, our Supreme Court has

 stated:

 The trial court [] concludes . . . whether the proffered expert
 testimony meets Rule 702(a)’s requirements of
 qualification, relevance, and reliability. This ruling will
 not be reversed on appeal absent a showing of abuse of
 discretion. And a trial court may be reversed for abuse of
 discretion only upon a showing that its ruling was
 manifestly unsupported by reason and could not have been
 STATE V. TEESATESKIE

 2021-NCCOA-409

 Opinion of the Court

 the result of a reasoned decision. The standard of review
 remains the same whether the trial court has admitted or
 excluded the testimony—even when the exclusion of expert
 testimony results in summary judgment and thereby
 becomes outcome determinative.

 State v. McGrady, 368 N.C. 880, 893, 787 S.E.2d 1, 11 (2016) (citations and marks

 omitted).

¶ 23 Assuming, without deciding, that this issue was preserved for appeal and that

 the admission of Rowland’s statement was an abuse of discretion in violation of Rule

 702, the statement’s admission was not prejudicial given the admission of testimony

 regarding Defendant’s statement to Trooper McLeod that she took 20 mg of

 Hydrocodone approximately one hour and fifteen minutes before the accident.

¶ 24 Defendant argues this testimony was prejudicial because the evidence that

 Defendant was impaired was “far from overwhelming,” expert testimony is given

 more weight by the jury, Hydrocodone is a stigmatized drug as a result of the opioid

 crisis, and the testimony “weighed on the minds of the jurors while they deliberated,

 as indicated by the jury’s note to the trial court during deliberations.” However,

 [a] defendant is prejudiced by errors relating to rights
 arising other than under the Constitution of the United
 States when there is a reasonable possibility that, had the
 error in question not been committed, a different result
 would have been reached at the trial out of which the
 appeal arises.

 N.C.G.S. § 15A-1443(a) (2019).
 STATE V. TEESATESKIE

 2021-NCCOA-409

 Opinion of the Court

¶ 25 There was not a reasonable possibility that a different result would have been

 reached if the trial court had excluded the testimony regarding the possible presence

 of Hydrocodone in Defendant’s blood. Although there would not have been expert

 testimony that Hydrocodone could have been within Defendant’s blood, there was

 testimony from Trooper McLeod that Defendant told him she had ingested 20 mg of

 Hydrocodone at 9:30 p.m. on the night of the accident.4 This testimony from Trooper

 McLeod tended to show Defendant had taken Hydrocodone prior to the accident and

 may have been impaired by it, in a more convincing way than Rowland’s expert

 testimony did. As a result, any abuse of discretion in admitting Rowland’s testimony

 was not prejudicial.

 CONCLUSION

¶ 26 The trial court did not err in denying Defendant’s motion to dismiss the

 charges of driving while impaired and felony death by motor vehicle, as, despite

 conflicting evidence, there was sufficient evidence of impairment to go to the jury.

 Further, even assuming, without deciding, that the trial court abused its discretion

 in admitting expert testimony regarding the potential presence of Hydrocodone in

 Defendant’s blood test results, Defendant was not prejudiced due to the admission of

 her statement that she took 20 mg of Hydrocodone approximately one hour and

 4 This testimony has not been challenged on appeal.
 STATE V. TEESATESKIE

 2021-NCCOA-409

 Opinion of the Court

fifteen minutes before the accident.

 NO ERROR.

 Judges DILLON and ARROWOOD concur.